# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> UGP HOLDINGS, INC., <br><br> Debtor. | Chapter 7 <br><br> Case No. 25-11529 (TMH) |
| In re: <br><br> UGP BUYER, INC., <br><br> Debtor. | Chapter 7 <br><br> Case No. 25-11530 (TMH) |
| In re: <br><br> UNITED GROUP PROGRAMS, INC., <br><br> Debtor. | Chapter 7 <br><br> Case No. 25-11531 (TMH) |

**EMERGENCY MOTION OF ZURICH AMERICAN INSURANCE COMPANY FOR RELIEF FROM THE AUTOMATIC STAY TO TERMINATE ITS CONTRACT WITH OPTIMED HEALTH**

Zurich American Insurance Company ("Zurich") pursuant to 11 U.S.C. § 362(d) and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") hereby moves this Court on an emergency basis for entry of an order granting relief from the automatic stay to permit Zurich to terminate its agreement with Optimed Health and engage another company to administer Zurich's insurance policies, and upon the *Declaration of Lisa Plante In Support of Zurich American Insurance Company's Emergency Motion for Relief from the Automatic Stay to Terminate Its Contract with Optimed Health* attached as **Exhibit A**, respectfully represent:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The legal predicate for the relief requested herein is chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") section 362(d) and Bankruptcy Rule 4001.

## RELEVANT BACKGROUND

3. Zurich is a party to a Marketing and Benefit Administration Agreement with Optimed Health dated January 28, 2022 which is attached as **Exhibit B** (the "Agreement").[1] Under the Agreement, Optimed Health is required to do the day-to-day work of administering certain hospital indemnity, group personal accident, basic accidental death and dismemberment, and supplemental gap medical insurance policies (the "Insurance Policies"). Decl, at ¶ 3. The Insurance Policies are optional coverages designed to provide financial protection against expenses arising from accidents or illnesses that are not fully covered by major medical insurance. These expenses may include out-of-pocket costs such as deductibles, copayments, and coinsurance.

4. Under the Agreement, Optimed Health's responsibilities include: (i) collecting and remitting to Zurich premiums and other payments from policyholders, (ii) forwarding to Zurich any complaints received from insureds under the policies, (iii) notifying Zurich of any claims asserted against the Insurance Policies, and (iv) serve as the third party administrator and pay to claimants any amounts they may be due for losses under the Insurance Policies, among other duties. *See* Exhibit B.

---

[1] It is not clear whether Optimed Health is a DBA of the Debtor or a separate entity. The Debtor's bankruptcy petition lists that it does business as Optimed but does not mention Optimed Health. Out of an abundance of caution, Zurich seeks relief from the stay to avoid any potential violation of the automatic stay.

5. Since the Petition Date, Optimed Health has ceased providing the services under the Agreement. Decl, at ¶ 7, 8, 9.

6. OptiMed Health's inability to fulfill its obligations under the Agreement compromises the intent of the Insurance Policies and places Zurich's customers at risk of financial hardship. Moreover, Zurich has not received any payment for premiums under the various active policies. Decl, at ¶ 5. Since Optimed Health was responsible for tracking the amount of premium owed every month, Zurich does not know with certainty how much premium is outstanding. Decl, at ¶ 7. Prior to the bankruptcy, the monthly premium payments to Zurich were approximately $165,000, net of commissions and fees payable to Optimed Health. Decl. at ¶ 5.

7. As a result, Zurich will suffer irreparable harm if it is not permitted to exercise its contractual rights to terminate the Agreement. Decl, at ¶ 10, 11. Some insureds who are not receiving services that were previously provided by Optimed Health, may decide to seek coverage with another insurer. Decl. at ¶ 10. Additionally, claimants who are not receiving the payments they are entitled to under Zurich's Insurance Policies may pursue litigation against Zurich for not meeting its obligations under its Insurance Policies.

**RELIEF REQUESTED**

8. Zurich respectfully requests this Court to enter the proposed order attached hereto granting relief from the automatic stay to allow Zurich to terminate the Agreement and engage another company to administer the Insurance Policies.

**BASIS FOR RELIEF REQUESTED**

9. Emergency relief is appropriate here. Every day that Zurich's customers are without the benefit of their insurance, denies them the rights they bargained for. Additionally, Zurich could suffer irreparable harm to its reputation in the marketplace if it cannot replace

Optimed Health with a functioning program administrator with employees who can service Zurich's policyholders. In fact, any further delays and policyholders may cancel their Insurance Policies with Zurich due to the gap in services caused by Optimed Health's insolvency. Zurich's customers have already waited nearly a month without the benefit of a program administrator for their Insurance Policies, which means they have been denied the services they bargained for. Claimants who may want to submit claims under their policy have been denied that right since Optimed Health has been unable to process any claims. This irreparable harm to Zurich and its policyholders justifies emergency relief.

10. Section 362(d)(1) of the Bankruptcy Code provides that this Court may lift the automatic stay where "cause" exists. However, the Bankruptcy Code does not define "cause". Therefore, what constitutes cause must be determined on a case-by-case basis. *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997). Sufficient "cause" exists here since the Estate's inability to perform under the Agreement will continue to cause damage to Zurich and its policyholders since Optimed Health is not administering their policies.

11. On information and belief, the Debtor has no employees and the Trustee is not operating the Debtor's business. Therefore, Zurich and its policyholders are being denied the benefit of the Agreement and the services Optimed Health is supposed to provide since the automatic stay took effect. This has resulted in claimants being denied an ability to file claims under their policy with Optimed Health who served as the third-party administrator for the Insurance Policies under the Agreement. Additionally, Zurich's customers are left without a program administrator to accept claims and provide customer service under their Insurance Policies. These reasons taken together constitute "cause" to lift the automatic stay.

12. Bankruptcy courts have also found "cause" exists to lift the automatic stay where the non-debtor contract counterparty is not adequately protected under the contract. *In re Tudor Motor Lodge Assocs., Ltd. P'ship*, 102 B.R. 936, 957 (Bankr. D.N.J. 1989) (lifting the automatic stay to permit termination of a contract because "[t]he debtor in this case has failed entirely to propose a method for adequately protecting DIAF's interest in the property at stake during the time it would determine whether to assume or reject the License Agreement."); *In re B-K of Kansas, Inc.*, 69 B.R. 812, 815 (Bankr. D. Kan. 1987) (granting relief from stay for lack of adequate protection where "debtors have continued to use the trademarks and service marks without paying Burger King Corporation."). Any party opposing relief from stay has the burden to show that Zurich is adequately protected. 11 U.S.C. § 362(g)(2).

13. No party will be able to meet their burden to show that Zurich is adequately protected. For one, Zurich's reputation is at stake since its customers have not been receiving any services from the Optimed Health since it filed for bankruptcy. Several of Zurich's customers are typically allowed to add and subtract coverage for its members at any time. Since Optimed Health has not been providing services, Zurich's strong reputation for its customer service is likely being diminished. There is no monetary amount that could adequately protect such reputational harm. *In re B-K of Kansas, Inc.*, 69 B.R. at 815 ("The movant's reputation to the general public is at stake.").

14. Second, Zurich is not receiving any premium payments during the pendency of this bankruptcy case, which prior to the bankruptcy amounted to approximately $165,000 per month, which was net of the commissions and fees payable to Optimed Health. Decl. at ¶ 5. The longer the automatic stay remains in place over the Agreement, the larger the unpaid premium balance grows. Furthermore, Zurich cannot determine the amount of unpaid premiums with any certainty

since it is Optimed Health's contractual responsibility to track the amount of premiums, collect and remit them to Zurich. Zurich should not be forced to wait any longer while it risks losing customers and its insureds are not receiving the services Optimed Health is supposed to provide.

## CONCLUSION

15. Zurich respectfully requests that this Court (a) enter an order granting relief from the automatic stay to permit Zurich to exercise its right to terminate the Agreement for breach; (b) grant Zurich such further relief it deems just and proper.

Dated: September 12, 2025

**BIELLI & KLAUDER, LLC**

*/s/ David M. Klauder*
David M. Klauder, Esquire (No. 5769)
1204 N. King Street
Wilmington, DE 19801
Phone: (302) 803-4600
dklauder@bk-legal.com

-and-

**FOX SWIBEL LEVIN & CARROLL LLP**

Margaret M. Anderson (admitted *pro hac vice*)
Kenneth M. Thomas (admitted *pro hac vice*)
Fox Swibel Levin & Carroll LLP
200 W. Madison Street
Suite 3000
Chicago, IL 60606
Phone: (312) 224-1200
Fax: (312) 224-1201
panderson@foxswibel.com
kthomas@foxswibel.com

*Attorneys for Zurich American Insurance Company*